*[SIGNATURE BLOCK LISTED BELOW]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| ADAPTIX, INC.,<br><br>                Plaintiff,<br><br>        v.<br><br>AMAZON.COM INC. and AT&T<br>MOBILITY LLC,<br>                Defendants. | Case No. 5:14-cv-01379-PSG<br><br>**AT&T MOBILITY'S  MOTION FOR<br>JUDGMENT ON THE PLEADINGS**<br><br>Judge:  Honorable Paul S. Grewal<br><br>Hearing Date: June 23, 2015, at 10:00 am<br>Courtroom 5, 4th Floor |
| ADAPTIX, INC.,<br>                Plaintiff,<br><br>v.<br><br>SONY MOBILE COMMUNICATIONS<br>(USA), INC. and AT&T MOBILITY LLC,<br>                Defendants. | Case No. 5:14-cv-01385-PSG<br><br>**AT&T MOBILITY'S  MOTION FOR<br>JUDGMENT ON THE PLEADINGS**<br><br>Judge:  Honorable Paul S. Grewal<br><br>Hearing Date: June 23, 2015, at 10:00 am<br>Courtroom 5, 4th Floor |

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................... 1

II. ISSUES TO BE DECIDED ..................................................................................... 3

III. FACTUAL BACKGROUND ................................................................................... 3

A.  Adaptix sued AT&T for infringement of the asserted patents, and final judgment has been entered that AT&T does not infringe ................................................................... 3

1.  Adaptix accused AT&T of infringement involving 4G LTE devices manufactured by Apple and HTC. .......................................................................... 3

2.  Adaptix brought claims for both direct and indirect infringement ............................... 4

3.  This Court entered final judgment in favor of AT&T on all of Adaptix's claims for infringement ................................................................................................. 4

B.  Adaptix's infringement claims in these cases are based on the same functionality accused in the closed cases .......................................................................... 5

IV. ARGUMENT ........................................................................................................ 5

A.  Courts may dismiss cases under Fed. R. Civ. P. 12(c) based on preclusion ...................... 6

B.  Res judicata bars Adaptix's claims against AT&T .............................................. 7

1.  Adaptix's claims against AT&T in the present cases are identical to those resolved by the prior judgment ......................................................................... 7

2.  The prior judgment was final and on the merits .......................................... 12

3.  The parties are identical. ........................................................................ 12

C.  Adaptix's claims against AT&T are independently barred by the *Kessler* Doctrine ........ 12

1.  The *Kessler* Doctrine bars Adaptix's current claims against AT&T because the accused devices are "essentially the same" as those in the closed cases. ................... 14

2.  The *Kessler* Doctrine also bars theories of infringement based on indirect infringement or additional patent claims .................................................. 15

V.  CONCLUSION .................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acumed LLC v. Stryker Corp.*,
    525 F.3d 1319 (Fed. Cir. 2008) ................................................................................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 6

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
    672 F.3d 1335 (Fed. Cir. 2012) ............................................................................ 9, 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................... 6

*Brain Life, LLC v. Elekta Inc.*,
    746 F.3d 1045 (Fed. Cir. 2014) ......................................................................... *passim*

*Chavez v. U.S.*,
    683 F.3d 1102 (9th Cir. 2012) ..................................................................................... 6

*Dreyfus v. First Nat'l Bank of Chicago*,
    424 F.2d 1171 (7th Cir.), cert. denied, 400 U.S. 832 (1970) ................................... 12

*Ericsson, Inc. v. D-Link Systems, Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) ................................................................................... 4

*Foster v. Hallco Mfg. Co.*,
    947 F.2d 469 (Fed. Cir. 1991) ........................................................................... 7, 9, 10

*Gazzano v. Stanford Univ.*,
    No. 12-05742-PSG, 2013 WL 2403646 (N.D. Cal. May 31, 2013) ........................... 6

*Hemphill v. Kimberly-Clark Corp.*,
    335 F. App'x 964 (Fed. Cir. 2008) (unpublished) ................................................... 11

*Jacobs Wind Elec. Co. v. Florida Dep't of Transp.*,
    919 F.2d 726 (Fed. Cir. 1990) ................................................................................... 10

*Kessler v. Eldred*,
    206 U.S. 285 (1907) ............................................................................................ *passim*

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    No. 3:10-CV-954-MO, 2014 WL 2533336 (D. Or. June 4, 2014) ........................... 10

*Newell Companies, Inc. v. Kenney Mfg. Co.*,
    864 F.2d 757 (Fed. Cir. 1988) ................................................................................... 10

*Nystrom v. Trex Co.*,
    580 F.3d 1281 (Fed. Cir. 2009) ................................................................. *passim*

*Owens v. Kaiser Found. Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001) ................................................................. 11

*Parklane Hosiery Co., Inc. v. Shore*,
    439 U.S. 322 (1979) ................................................................. 11

*SpeedTrack, Inc. v. Office Depot, Inc.*,
    No. C 07-3602 PJH, 2014 WL 1813292 (N.D. Cal. May 6, 2014) ........................................ 15

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*,
    474 F.3d 1298 (Fed. Cir. 2007) ................................................................. 7

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
    971 F.2d 244 (9th Cir. 1992) ................................................................. 12

*Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*,
    721 F.2d 1305 (Fed. Cir. 1983) ................................................................. 9

**STATUTES**

Pub. L. 102-560 ................................................................. 10

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 12(c) ................................................................. 1, 6

Fed. R. Civ. Proc. 12(b)(6) ................................................................. 6

Fed. R. Civ. Proc. 41(b) ................................................................. 12

Fed. R. Evid. 201(b) ................................................................. 6

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant AT&T Mobility LLC's ("AT&T") Motion for Judgment on the Pleadings ("Motion") is being filed pursuant to Federal Rule of Civil Procedure 12(c).  **PLEASE TAKE FURTHER NOTICE** that a hearing is set for June 23, 2015, at 10:00 a.m. on this Motion.  The hearing will take place in Courtroom 4 of the San Jose Courthouse, 280 S. 1st Street, 4th Floor, San Jose, California, 95113 before the Honorable Paul S. Grewal.

By this motion, AT&T seeks dismissal of all claims against it by Adaptix, Inc. ("Adaptix") in the above-captioned actions.  AT&T also requests that the Court take judicial notice of the records in the following proceedings of this Court (referred to collectively herein as the "closed cases"):

- 5:13-cv-01777-PSG (N.D. Cal.)
- 5:13-cv-01778-PSG (N.D. Cal.)
- 5:13-cv-02023-PSG (N.D. Cal.)

AT&T further requests that the Court take judicial notice of the records in Case No. 6:12-0017-RWS-CMC (E.D. Tex.), where just yesterday, Magistrate Judge Craven entered a report and recommendation to dismiss Adaptix's claims against AT&T because those claims are barred by res judicata, the *Kessler* doctrine and issue preclusion.  *See* Exhibit A (E.D. Tex, Preclusion Order).

## I.   <u>INTRODUCTION</u>

Over the past three years, Adaptix has serially filed more than 70 cases in multiple "waves" of litigation in this Court and the Eastern District of Texas, alleging that LTE device manufacturers and their respective wireless carriers infringe U.S. Patents 7,454,212 ("the '212 patent") and 6,947,748 ("the '748 patent") (collectively the "asserted patents").  Adaptix lost the first wave of cases on February 2, 2015 when this Court entered final judgment against Adaptix after granting summary judgment of non-infringement in favor of, *inter alia*, AT&T.

This suit presents the same infringement claims brought for the same reason—AT&T's sale of 4G LTE devices (*e.g.*, smartphones).  In the closed cases, the 4G LTE devices were Apple

and HTC devices.   Here, they are Amazon and Sony devices.   But in all cases the accused functionality, which is defined in the 3GPP LTE industry standard,[1] is *exactly* the same, regardless of which company manufactured the device.   Adaptix admits this.   That fact has profound implications for these cases.

*First*, res judicata (claim preclusion) bars Adaptix's infringement claims—for both direct and indirect infringement—in the present cases against AT&T.   Res judicata bars suit against a party when there is a final judgment of non-infringement and the devices in the second suit are "essentially the same" as those in the first.   *Nystrom v. Trex Co.*, 580 F.3d 1281, 1285 (Fed. Cir. 2009).   Here, there is a final judgment in the closed cases that AT&T does not infringe the asserted patents, and the accused devices in the present cases are "essentially the same" as the accused devices in the closed cases.

*Second*, the *Kessler* Doctrine also bars Adaptix's claims against AT&T.   The *Kessler* Doctrine prohibits suits against a defendant when a court has previously found non-infringement involving the same accused devices (or devices that are "essentially the same" as the accused devices).   *Kessler v. Eldred*, 206 U.S. 285 (1907); *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1058 (Fed. Cir. 2014).   Here, Adaptix accuses AT&T of infringing the same patents asserted in the closed cases, where the Court already held that AT&T does <u>not</u> infringe.   Indeed, Adaptix's infringement claims in the closed cases were based on functionality defined in the 3GPP LTE industry standard, which is identical to the accused functionality in these cases.   Thus, res judicata and the *Kessler* Doctrine each independently bar Adaptix's direct and indirect infringement claims against AT&T in these cases.

* * *

Adaptix fully argued at length in the closed cases that the 4G LTE devices sold by AT&T infringe the asserted patents.   Adaptix lost.   Adaptix should not be able to continue to argue in these cases that the 4G LTE devices sold by AT&T infringe those very same patents for the very same reasons.   It is irrelevant that the 4G LTE devices in the closed cases were Apple and HTC

---

[1] AT&T sells "4G LTE" devices that comply with portions of the 3GPP LTE standard.

devices, instead of Amazon or Sony devices.

## II.     ISSUES TO BE DECIDED

1.  Does res judicata bar Adaptix's claims against AT&T?

2.  Does the *Kessler* Doctrine bar Adaptix's claims against AT&T?

## III.    FACTUAL BACKGROUND

### A.     Adaptix sued AT&T for infringement of the asserted patents, and final judgment has been entered that AT&T does not infringe.

In 2012, Adaptix filed multiple suits against AT&T asserting infringement of the asserted patents.  In each case, Adaptix paired AT&T with a different handset manufacturer co-defendant (*e.g.*, Apple, HTC, LG, or Pantech).  *See, e.g.*, D.I. 1 in EDTX Case Nos. 6-12-cv-00017, -019, -125.  The cases involving Apple and HTC were transferred to the Northern District of California. *See* NDCA Case Nos. 5:13-cv-1777, -1778, and -2023 (collectively the "closed cases").

#### 1.     Adaptix accused AT&T of infringement involving 4G LTE devices manufactured by Apple and HTC.

In the closed cases, Adaptix accused AT&T of infringement based on "making, using, offering for sale, selling and/or importing computerized devices including without limitation" certain 4G LTE devices manufactured by Apple and HTC.  *See*, *e.g.*, 1777 Case, D.I. 1 at ¶¶ 10, 15; 2023 Case, D.I. 1 at ¶¶ 10, 14.   Adaptix accused a variety of Apple and HTC devices, including for example the Apple iPad and iPad Mini with Retina Display, iPad Mini, iPad 3, iPad Air, iPhone 5, iPhone 5c, and iPhone 5s, and the HTC Rezound 4G, Thunderbolt, Droid DNA, Droid Incredible, One, One X, One X+, One VX, One Mini, Vivid, First, Titan II, and Jetstream.[2]

Adaptix accused these devices based on their compliance with the 3GPP Long Term Evolution ("LTE") standard.  For example, Adaptix stated in its infringement contentions that:

> AT&T, by and through the Accused Products, makes, uses, sells, or offers to sell the apparatus comprising each and every limitation below.

---

[2]  *See*, *e.g.*, 1777 Case, D.I. 1 (Complaint), 486-01 (Adaptix's proposed final judgment, listing products); 1778 Case, D.I. 1 (Complaint), 411-1 (Adaptix's proposed final judgment, listing products); 2023 Case, D.I. 1 (Complaint), 458-1 (Adaptix's proposed final judgment, listing products).

> The Accused Products are advertised as employing "LTE" (i.e., Long Term Evolution). Each Accused Product includes a 4G LTE baseband. For example, the iPhone 5 uses the Qualcomm MDM9615.
>
> LTE is defined by a set of standards that specify the capabilities and functionality that LTE services must be capable of achieving. The Accused Products must satisfy many of these requirements.

2023 Case, D.I. 257-12 (Adaptix's Infringement Contentions).

Adaptix's infringement contentions were based solely on the accused devices' compliance with the 4G LTE industry standard. *See, e.g.*, *id*. Adaptix's contentions stated that there were "no material differences among the Accused Products for purposes of Plaintiff's infringement analysis." 2023 Case, D.I. 257-12 ("Except as otherwise noted,[3] there are no material differences among the Accused Products for purposes of ADAPTIX's infringement analysis. The functionality discussed applies to all Accused Products.").

### 2. Adaptix brought claims for both direct and indirect infringement.

The complaints in the closed cases included allegations that AT&T infringed by direct infringement and both forms of indirect infringement (contributory infringement and inducement). *See*, *e.g.*, 1777 Case, D.I. 1 at ¶¶ 10–11, 15–16; 2023 Case, D.I. 1 at ¶¶ 10–11; 15–16.[4]

### 3. This Court entered final judgment in favor of AT&T on all of Adaptix's claims for infringement.

On January 20, 2015, this Court granted summary judgment (in the closed cases) that AT&T does not directly infringe the asserted patents. *See, e.g.*, 1777 Case, D.I. 477. In citing the recently issued decision in *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201 (Fed. Cir. 2014), the Court held that "[u]nder *Ericsson*, even if [Defendants] supply handsets preprogrammed to perform multiple claimed steps, Defendants must still perform at least one step of a claimed method themselves to be held liable for direct infringement. Because there is no genuine dispute

---

[3] Adaptix did not note any such differences.

[4] Despite pleading both forms of indirect infringement in its complaint, Adaptix dropped its inducement theory and did not include contributory infringement in its infringement contentions. Adaptix later tried to amend its contentions after the deadline to add contributory infringement, but the Court denied leave to amend because Adaptix had not been diligent. *See, e.g.*, 2023 Case, D.I.s 248 (motion) & 255 (order).

that Defendants perform no such step, Defendants' motions must be GRANTED."   1777 Case, D.I. 477 at 3.   This Court also rejected Adaptix's argument that AT&T directly infringes the method claims by controlling the use of its customers' LTE devices.  *Id.* at 6.

Given the summary judgment order, Adaptix had no remaining viable claims against AT&T.  The Court entered final judgment on February 2, 2015, as follows:

> The Court enters final judgment in favor of defendants Apple Inc. and AT&T Mobility LLC and against plaintiff Adaptix, Inc. ("Adaptix") on all of Adaptix's claims for infringement of U.S. Patent No. 7,454,212 ("'212 patent") and U.S. Patent No. 6,947,748 ("'748 patent"). Plaintiff shall take nothing by way of its complaints.

> In addition, claims 9 and 10 of the '212 patent and claims 8 and 9 of the '748 patent are adjudged invalid.  Defendants' counterclaims with respect to all other patent claims of the '212 patent and '748 patent are hereby dismissed without prejudice.

1777 Case, D.I. 489; *see also* 1778 Case, D.I. 416; 2023 Case, D.I. 461.

### B.    Adaptix's infringement claims in these cases are based on the same functionality accused in the closed cases.

Adaptix is pursuing the same infringement theory in this case that it pursued in the closed cases:  the accused devices operating on the accused carrier networks allegedly infringe through their use of certain CQI reporting modes as defined in the LTE industry standard.  *E.g., compare* Exs. B-C[5] (Infringement Contentions served on AT&T in these cases) *with* 2023 Case, D.I. 269 at 3 (court Order discussing Adaptix's infringement theories).  Adaptix has repeatedly stated that its infringement claims are based entirely on functionality defined in the 3GPP LTE industry standard.  For example: "With all of these devices the accused technology is [ ] substantially identical from device to device. . . . our theory is basically they are the same throughout."  2023 Case, 10/9/13 Hearing Tr. at 7 (Adaptix's counsel).

### IV.    ARGUMENT

Res judicata (claim preclusion) and the *Kessler* Doctrine each independently bar all of Adaptix's claims in these cases against AT&T.

---

[5] All exhibits cited herein are attached to the Declaration in Support of AT&T's motion and filed contemporaneously herewith.

**A.     Courts may dismiss cases under Fed. R. Civ. P. 12(c) based on preclusion**

Under Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  "The standard for granting judgment on the pleadings is similar to that of a Rule 12(b)(6) challenge—a court must determine whether the complaint 'contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Gazzano v. Stanford Univ.*, No. 12-05742-PSG, 2013 WL 2403646, at *2 (N.D. Cal. May 31, 2013) (citing *Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  That is, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.  Significantly, facial plausibility "asks for more than a sheer possibility that the defendant has acted unlawfully."  *Iqbal,* 556 U.S. at 678.  A complaint fails to state a claim when it pleads facts "that are 'merely consistent with' a defendant's liability."  *Id.*  While a court must accept as true all allegations in the complaint, this tenet does not apply to legal conclusions.  *Id.*  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (citation omitted).  A party may properly raise the defense of res judicata on a motion for judgment on the pleadings.  *See, e.g., Chang v. Wells Fargo & Co.*, No. 09-0216-CW, 2009 WL 2524406, at *4 (N.D. Cal. Aug. 17, 2009).

In considering a motion for judgment on the pleadings based on preclusion, a court may consider, in addition to the complaint, matters of judicial notice.  *Id.*  Such matters include "matters of public record," including the court's own previous records.[6]  Here, AT&T requests

---

[6] Fed. R. Evid. 201(b) (stating the court may judicially notice a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

that the Court judicially notice the records in other relevant Adaptix cases, including cases in this Court with the following numbers:  5:13-cv-01777-PSG ("the 1777 case"), 5:13-cv-01778 ("the 1778 case"), and 5:13-cv-02023-PSG ("the 2023 case").

## B.  Res judicata bars Adaptix's claims against AT&T

In patent cases, the Federal Circuit applies regional circuit law in determining general principles of res judicata.  *See, e.g.*, *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1304 (Fed. Cir. 2007) (applying regional law to determine whether a patentee was bound by its previous admissions in determining whether claim preclusion applied).  However, in addressing issues of res judicata that are "particular to patent law," Federal Circuit law and not regional circuit law governs.  *Nystrom v. Trex Co.*, 580 F.3d 1281, 1285 (Fed. Cir. 2009).

In the Ninth Circuit, res judicata applies when there is:

(1) an identity of claims;
(2) a final judgment on the merits; and
(3) identity or privity between the parties.

*Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002).  In patent cases, whether the same claim or cause of action was involved in both actions is governed by Federal Circuit law.  *Nystrom*, 580 F.3d at 1285; *see also Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008) ("Whether two claims for patent infringement are identical is a claim preclusion issue that is 'particular to patent law,' and therefore we analyze it under Federal Circuit law.").  Here, all the elements of res judicata are satisfied.

### 1.  Adaptix's claims against AT&T in the present cases are identical to those resolved by the prior judgment.

The first element of res judicata—that there be identity of claims in both suits—is satisfied.

#### (i)  Federal Circuit law establishes that claims or causes of action are the same when the accused devices are "essentially the same."

Under established Federal Circuit law, res judicata bars any subsequent assertion of a patent against a party or its privies when the devices in the second suit are "essentially the same" as the devices in the first suit.  *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479–80 (Fed. Cir. 1991).

Devices are "essentially the same" for purposes of res judicata even if there are genuine differences between the devices, so long as those differences are not relevant to the infringement inquiry; "[c]olorable changes in an infringing device or changes *unrelated to the limitations in the claim of the patent* would not present a new cause of action." *Id.* at 480 (emphasis added). *See also* Ex. A at 25-30 (Judge Craven finding causes of action in related Adaptix cases to be "essentially the same," in res judicata analysis in the *Adaptix v. LG* case in Texas).

The Federal Circuit's opinion in *Nystrom v. Trex Co., Inc.*, is instructive. The plaintiff, Ron Nystrom, held a patent on an outdoor wood-flooring board shaped to shed water from its upper surface. 580 F.3d at 1282. In 2001, Nystrom sued Trex, a decking manufacturer, alleging that Trex's first-generation wood-composite boards infringed Nystrom's patents. *Id.* at 1283. Nystrom alleged literal infringement and, after receiving an unfavorable claim construction ruling, conceded non-infringement based on that ruling. *Id.* at 1284. The Federal Circuit reversed the claim construction in part, and on remand, Nystrom tried to argue infringement by equivalents. *Id.* The district court held that Nystrom had waived that argument, and the Federal Circuit affirmed. *Id.*

After the completion of the first case, Nystrom filed a second suit against Trex and added, for the first time, two of Trex's distributors as defendants. *Id.* Nystrom alleged that Trex's second-generation products infringed his patent by equivalents. *Id.* Nystrom also argued that these second-generation products could not have been included in the first suit because they reached the market after judgment was entered in the first case. *See* 2009 WL 1208038 (Fed. Cir. Apr. 16, 2009), Nystrom's Reply Brief at 7 (arguing that "the Trex II products could not possibly have been raised in the prior action" because "the Trex II products were not introduced until at least October of 2003, a year after final judgment of non-infringement was entered on the Trex I products"); *see also id.* at 2. The district court denied Trex's motion for summary judgment based on res judicata but granted it on other grounds. *Nystrom*, 580 F.3d at 1283.

The Federal Circuit held that the district court should have granted summary judgment based on res judicata. The court explained, "Where an accused infringer has prevailed in an

infringement suit, 'the accused devices have the status of noninfringements, and the defendant acquires the status of a noninfringer to that extent.'" *Id.* at 1285 (quoting *Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1316 (Fed. Cir. 1983)).  The court noted that while the second-generation Trex boards were materially different in certain respects, the new boards were unchanged as to the claim limitations at issue in the first suit.  *Id.*  The court held that under such circumstances, Nystrom was "attempting to prove infringement of the same claim limitations as to the same features of the accused devices" and that, therefore, "this case presents the exact situation that res judicata seeks to prevent."  *Id.* at 1286.  Significantly, the fact that the second-generation boards were manufactured after the final judgment in the first case did not affect the court's analysis; the only relevant inquiry was whether the new, post-judgment products were "essentially the same" as those in the first suit.  *Id.* at 1284–86.

Any attempt by Adaptix to treat Nystrom as an issue preclusion case, rather than a claim preclusion case, cannot stand.  Not only does Nystrom repeatedly mention "claim preclusion" and "res judicata" without any reference to issue preclusion, 580 F.3d at 1285-86, but issue preclusion could not have barred Nystrom's claim because he asserted a different theory (infringement by equivalents) that was not adjudicated on the merits in the earlier action, *id*. at 1284-86.  Because Nystrom had not previously litigated the doctrine of equivalents, issue preclusion was inapplicable.  Nystrom can thus only be understood as a claim preclusion case—as the Federal Circuit's opinion makes crystal clear.

Established Federal Circuit precedent therefore holds that res judicata (claim preclusion) precludes a later lawsuit on the same patent against a defendant based on products that are "essentially the same" as those in the previous suit, regardless of whether those products were made before or after the judgment in the first suit.

This holding controls here despite two recent three-judge panel Federal Circuit opinions that have conflicted with the holdings of *Foster*, *Nystrom*, and related cases by holding that res judicata can be limited to products made before the judgment in the first suit.  In the first such case, *Aspex v. Marchon*, the Federal Circuit incorrectly characterized *Nystrom* as having involved

issue preclusion, not claim preclusion (*i.e.*, not res judicata), and followed with a statement that res judicata did not bar a second suit based on products that did not exist at the time the first suit was filed.  *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1343 (Fed. Cir. 2012).  In the second such case, *Brain Life v. Elekta*, the opinion relied on *Aspex* to reach the same conclusion that res judicata did not bar second suits against "acts of alleged infringement occurring after entry of the final judgment" in the first case.  *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1054 (Fed. Cir. 2014).

Because *Aspex* and *Brain Life* conflict with earlier Federal Circuit precedent on res judicata, they are not controlling.  Three-judge panels of the Federal Circuit are "without power to reconsider the holding" of a previous case; "[a] reversal of that holding would have to be through an en banc proceeding in [the Federal Circuit], Supreme Court review, or through petitioning the U.S. Congress to change the patent statute."  *Jacobs Wind Elec. Co. v. Florida Dep't of Transp.*, 919 F.2d 726, 728 (Fed. Cir. 1990), *superseded on other grounds by* Pub. L. 102-560; *see also Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("Where there is direct conflict, the precedential decision is the first.").  Therefore, to the extent that *Aspex* and *Brain Life* contradict the Federal Circuit's earlier precedent, including *Foster* and *Nystrom*, they do not control.  *See Mentor Graphics Corp. v. EVE-USA, Inc.*, No. 3:10-CV-954-MO, 2014 WL 2533336, at *1 (D. Or. June 4, 2014) ("[T]he *Foster* line of cases cannot be reconciled with *Aspex* and *Brain Life*.  Because one three-judge panel cannot overrule another, *Foster* controls until the Federal Circuit sitting *en banc* says otherwise." (internal citations omitted)).

(ii) The accused devices in the present case are "essentially the same" as those in the closed cases.

Res judicata bars Adaptix's infringement claims against AT&T because the devices accused in the present cases are "essentially the same" for purposes of infringement as the Apple and HTC devices accused in the closed cases.  Adaptix's infringement contentions in the closed cases are virtually identical to its contentions in these cases, save for minor changes such as the swapping out of the respective products' names.  As stated *supra*, Adaptix has admitted that the accused functionality of the devices across its pending cases is the same as the accused

functionality of the Apple and HTC devices in the closed cases.  Moreover, in connection with pending motions to dismiss in other Adaptix cases like these, Adaptix conceded the products there are "essentially the same," and challenged only the temporal scope of the applicable claim preclusion.  *See, e.g.,* NDCA Case No. 5:15-364-PSG, D.I. 34 at 6-10; D.I. 36 at 2.  Adaptix's infringement theories in these cases and in the closed cases are based on the 3GPP LTE industry standard and are the same for all accused devices.  The devices therefore, under *Nystrom*, "remain[] unchanged with respect to the corresponding claim limitations at issue in the first suit." 580 F.3d at 1285.  As in *Nystrom*, the plaintiff "would be attempting to prove infringement of the same claim limitations as to the same features of the accused devices."  *Id.* at 1286.

> (iii) Adaptix's attempt to pursue patent claims and theories of indirect infringement in the present case that it failed to pursue in the closed cases does not escape res judicata.

Res judicata precludes "any claims that were raised ***or could have been raised***" in a prior action.  *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)) (emphasis added).  In *Nystrom*, the plaintiff was barred from raising in his second suit a theory of infringement by equivalents even though he had attempted to argue infringement by equivalents unsuccessfully on remand in his first suit and had been barred from doing so because his theories were waived.  580 F.3d at 1285. Because the devices were "essentially the same," it was irrelevant which legal theory of infringement Nystrom asserted in the second suit.  The accused *devices* (and those "essentially the same") have the "status of noninfringements" regardless of the infringement theory.  *Nystrom*, 580 F.3d at 1285; *cf. Hemphill v. Kimberly-Clark Corp.*, 335 F. App'x 964, 964-65 (Fed. Cir. 2008) (unpublished) (summarily affirming dismissal of a later case based on res judicata, as the later suit was "based on the same cause of action" even though it asserted different patent claims (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.5 (1979))).

Here, it is beyond dispute that Adaptix either asserted or could have asserted direct and indirect infringement for all claims of the '212 and '748 patents in the closed cases.  Thus, the fact that Adaptix's contributory infringement contentions in the closed cases were dismissed on

procedural grounds is irrelevant to application of res judicata in the present cases.

### 2.      The prior judgment was final and on the merits.

The second element of res judicata under the Ninth Circuit's test is whether there is a final judgment on the merits.  This is indisputably the case here: on February 2, this Court entered a final judgment in favor of AT&T with respect to "all of Adaptix's claims for infringement . . . ." 01777 Case, D.I. 489; -1778 Case, D.I. 416.  This judgment followed the Court's order granting summary judgment of non-infringement.  01777 Case, D.I. 477; -1778 Case, D.I. 402.  Even a dismissal of a case on procedural grounds is, unless specifically stated to be otherwise or based on certain exceptions not applicable here,[7] "an adjudication on the merits."  *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002).  Therefore, the second element of the Ninth Circuit's test is met.

### 3.      The parties are identical.

The party invoking res judicata here—AT&T—is identical to a party that prevailed in the closed cases.  Adaptix is also a party in both sets of cases.  The fact that the closed cases included other defendants (Apple and HTC) or that Amazon and Sony are defendants in the present cases is irrelevant.  *See*, *e.g.*, *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 249 (9th Cir. 1992) ("the naming of additional parties does not eliminate the res judicata effect of a prior judgment 'so long as the judgment was rendered on the merits, the cause of action was the same and the party against whom the doctrine is asserted was a party to the former litigation.'") (quoting *Dreyfus v. First Nat'l Bank of Chicago*, 424 F.2d 1171, 1175 (7th Cir.), cert. denied, 400 U.S. 832, 91 (1970)).

For all of the above reasons, res judicata bars Adaptix's claims against AT&T in these cases.

### C.      Adaptix's claims against AT&T are independently barred by the *Kessler* Doctrine

---

[7] These circumstances are when a dismissal is based on lack of jurisdiction, improper venue, or failure to join a party under Rule 19.  *Stewart*, 297 F.3d at 956 (quoting Fed. R. Civ. Proc. 41(b)).

Adaptix's claims against AT&T are also barred by the *Kessler* Doctrine, independent of res judicata. The *Kessler* Doctrine, first set forth by the Supreme Court in 1907 in *Kessler v. Eldred*, prohibits subsequent suits for patent infringement against a previous defendant or that defendant's customers, and is a separate doctrine from res judicata. 206 U.S. 285, 285 (1907). The bar applies to claims for infringement of a patent found to be not infringed in a previous case, and it bars a subsequent suit against a party when the devices are "essentially the same." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1058 (Fed. Cir. 2014).

In *Kessler v. Eldred*, Eldred had sued his competitor Kessler for infringement of a patent related to an electric lamp lighter. Eldred sued Kessler first in Indiana, where the court found that Kessler's lighters did not infringe. 206 U.S. at 258–86. Eldred then sued one of Kessler's customers in New York, and Kessler intervened to indemnify his customer. *Id.* at 286. At the same time, Kessler also filed suit in Illinois to enjoin Eldred from further infringement suits based on Kessler's lighter. *Id.* The Supreme Court held that Kessler's judgment of non-infringement was a final resolution that Kessler could sell and use his lighter: "This judgment, whether it proceeds upon good reasons or upon bad reasons, whether it was right or wrong, settled finally and everywhere, and so far as Eldred . . . was concerned, that Kessler had the right to manufacture, use, and sell the electric cigar lighter before the court." *Id.* at 288.

The Federal Circuit has most recently applied the *Kessler* Doctrine in *Brain Life*, discussed above. 746 F.3d 1045. While the court in *Brain Life* held (contrary to established Federal Circuit precedent) that res judicata did *not* apply to post-judgment alleged infringement, the court held that the defendant was nonetheless protected by the *Kessler* Doctrine.[8] *Id.* at 1058. In *Brain Life*, plaintiff Brain Life's predecessor-in-interest had sued defendant Elekta in 1997, alleging that three of Elekta's products (GammaKnife, GammaPlan, and Surgiplan) infringed the '684 patent. *Id.* at 1049. Elekta prevailed on appeal after losing a jury trial. *Id.* at 1050. Brain Life later acquired the rights to the '684 patent and sued Elekta for infringement based on GammaKnife,

---

[8] There is no conflict between *Brain Life*'s holding on the *Kessler* Doctrine and any past Federal Circuit (or other) precedent, as there is with *Brain Life*'s holding on res judicata. Even if there were, *Kessler* itself would control as a Supreme Court decision.

GammaPlan, SurgiPlan, and a new product, ERGO++.  *Id.* at 1051.

The Federal Circuit relied on *Kessler* and held that Brain Life's suit against Elekta was barred with respect to the GammaKnife, GammaPlan, and SurgiPlan, which were "essentially the same as the previously litigated versions." *Id.* at 1058–59.  The court described *Kessler* as having granted "a limited trade right to continue producing, using, and selling the electric lighters that were the subject of the first suit and to do so without fear of allegations of infringement by Eldred—even when the acts of infringement occurred post-final judgment and even when it was third-parties who allegedly engaged in those acts of infringement." *Id.* at 1056.  The court explained that, under the *Kessler* Doctrine, "when an alleged infringer prevails in demonstrating noninfringement, the specific accused device(s) acquires the 'status' of a noninfringing device vis-à-vis the asserted patent claims." *Id.* at 1057.  This status covers both the previously accused devices and any "new" devices in a second suit when those devices are "essentially the same" as the previously accused devices.  *Id.*

### 1. The *Kessler* Doctrine bars Adaptix's current claims against AT&T because the accused devices are "essentially the same" as those in the closed cases.

The *Kessler* Doctrine bars Adaptix's current claims against AT&T because the devices accused in the present cases are "essentially the same" as the Apple and HTC devices accused in the closed cases.  *Brain Life*, 746 F.3d at 1058.  As discussed above, Adaptix's infringement theories are based on functionality defined in the 3GPP LTE industry standard; there is no difference for infringement purposes between the Apple and HTC devices accused in the closed cases and the devices accused in this case, just as in *Brain Life*.  *Id.*  Nor has Adaptix alleged any differences with respect to the operation of AT&T's LTE network as between the California cases and the present case.  The accused devices in the present cases are therefore "essentially the same" as those already adjudicated to have "the 'status' of [] noninfringing device[s]," *id.* at 1058, and Adaptix's claims against AT&T for infringement of the '748 and '212 patents are thus barred by the *Kessler* Doctrine.  *See* Ex. A at 40-42 (Judge Craven finding Adaptix's claims against AT&T barred by the *Kessler* doctrine in the *Adaptix v. LG* case in Texas).

2.     The *Kessler* Doctrine also bars theories of infringement based on indirect infringement or additional patent claims.

The *Kessler* Doctrine analysis is unaffected by the fact that in the closed cases the Court denied Adaptix's untimely attempt to pursue a contributory infringement theory or Adaptix's pursuit of additional claims of the '748 and '212 patents in the present cases.  As *Brain Life* made clear, the *Kessler* Doctrine provides that a previously vindicated defendant is "free to continue engaging in the accused commercial activity as a non-infringer."  *Brain Life*, 746 F.3d at 1058.  In *Brain Life*, the Federal Circuit held that it was irrelevant that plaintiff Brain Life was asserting different claims of the patent in the second suit, stating, "[t]hat is beside the point under the *Kessler* Doctrine because Elekta's GammaKnife, GammaPlan, and SurgiPlan products have acquired the status of noninfringing products as to the '684 *patent*, i.e., all claims that were brought or could have been brought in the first suit."  *Id.* at 1058–59.

Further, in applying *Brain Life*, the Northern District of California has held that the *Kessler* Doctrine bars a plaintiff's assertion of new infringement theories in the second case.  *SpeedTrack, Inc. v. Office Depot, Inc.*, No. C 07-3602 PJH, 2014 WL 1813292, at *9 (N.D. Cal. May 6, 2014) (barring a plaintiff from pursuing infringement under the doctrine of equivalents even though the plaintiff had not pursued that particular infringement theory in the first case).  The court in *SpeedTrack* held that new theories did not give new life to a previously litigated case: "Certainly, if the *Kessler* doctrine bars the assertion of new *claims*, it must also bar the assertion of new *theories* involving the same, already-asserted claims."  *Id.*

The reasoning of *Brain Life* and *SpeedTrack* governs Adaptix's assertion of any previously neglected patent claims and theories of indirect infringement.  It is irrelevant under which patent claim or theory Adaptix seeks to prove that AT&T is liable for infringement of the '212 and '748 patents, because AT&T has, by virtue of the existing judgment of non-infringement, acquired a "trade right" to continue in the accused commercial activity free from litigation.  *Brain Life*, 746 F.3d at 1058; *SpeedTrack*, 2014 WL 1813292, at *9.  That right is not limited to the specific contours of the theories, patent claims, or arguments that Adaptix presented in the closed cases—it is a right that protects the previous defendants against all claims of infringement involving the

15

same patents and "essentially the same" devices.  *Brain Life*, 746 F.3d at 1058–59.  Adaptix is therefore barred from asserting *any* theory of infringement, whether direct or indirect, against AT&T based on Adaptix's patents and products that are "essentially the same" as those in the closed cases.

In sum, the *Kessler* Doctrine bars Adaptix's claims against AT&T in these cases, independent of res judicata.

## V.      CONCLUSION

For the foregoing reasons, the Court should grant AT&T's motion for judgment on the pleadings and determine that:

          (i)    res judicata bars all of Adaptix's claims against AT&T for infringement of the '212 and '748 patents; and

          (ii)   the *Kessler* Doctrine bars all of Adaptix's claims against AT&T for infringement of the '212 and '748 patents.


Dated:  May 13, 2015

Respectfully submitted,

*/s/ David R. Clonts*
David R. Clonts (Admitted *pro hac vice*)
dclonts@akingump.com
James L. Duncan III (Admitted *pro hac vice*)
jduncan@akingump.com
Michael F. Reeder, II (Admitted *pro hac vice*)
mreeder@akingump.com
Ashley Edison Brown (Admitted *pro hac vice*)
ambrown@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana St., 44th Floor
Houston, TX 77002
Telephone: 713.220.5800
Facsimile: 713.236.0822

Danielle C. Ginty (SBN 261809)
dginty@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
580 California Street, Suite 1500
San Francisco, CA 94104
Telephone: (415) 765-9500
Facsimile: (415) 765-9510

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ John H. McDowell, Jr.*
John H. McDowell, Jr. (Admitted *pro hac vice*)
Texas State Bar No. 13570825
Email: johnmcdowell@andrewskurth.com
Benjamin J. Setnick (Admitted *pro hac vice*)
Texas State Bar No. 24058820
Email: bensetnick@andrewskurth.com
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: 214-659-4400
Facsimile: 214-915-1434

David R. Ongaro
Thompson & Knight LLP
50 California Street, Suite 3325
San Francisco, California 94111
Email: David.Ongaro@tklaw.com
Telephone: 415-433-3901

*Attorneys for Defendant*
*AT&T Mobility LLC*

AT&T'S MOTION FOR JUDGMENT ON THE PLEADINGS
Case Nos. 5:14-cv-01379, -1385