UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ADAPTIX, INC.,

                Plaintiff,

    v.

AMAZON.COM, INC., et al.,

                Defendants.

Case No. 5:14-cv-01379-PSG

**ORDER GRANTING MOTION TO DISMISS**

**(Re: Docket No. 142)**

ADAPTIX, INC.,

                Plaintiff,

    v.

SONY MOBILE COMMUNICATIONS (USA), INC., et al.,

                Defendants.

Case No. 5:14-cv-01385-PSG

**ORDER GRANTING MOTION TO DISMISS**

**(Re: Docket No. 131)**

ADAPTIX, INC.,

                Plaintiff,

    v.

APPLE INC., et al.,

                Defendants.

Case No. 5:15-cv-00364-PSG

**ORDER GRANTING MOTIONS TO DISMISS**

**(Re: Docket Nos. 17, 25)**

ADAPTIX, INC.,

                Plaintiff,

    v.

APPLE INC., et al.,

                Defendants.

Case No. 5:15-cv-00365-PSG

**ORDER GRANTING MOTIONS TO DISMISS**

**(Re: Docket Nos. 22, 28)**

1

**United States District Court**
For the Northern District of California

| | | |
|---|---|---|
| 1 | ADAPTIX, INC., ) | Case No. 5:15-cv-00366-PSG |
| 2 | Plaintiff, ) | **ORDER GRANTING MOTIONS TO** |
| | ) | **DISMISS** |
| 3 | v. ) | |
| 4 | HTC CORPORATION, et al., ) | **(Re: Docket Nos. 16, 19)** |
| 5 | Defendants. ) | |

_____

ADAPTIX, INC., )                     Case No. 5:15-cv-00367-PSG

           PLAINTIFF, )       **ORDER GRANTING MOTIONS TO**
                      ) **DISMISS**

     V. )

HTC CORPORATION, et al., )            **(Re: Docket Nos. 24, 30)**

          Defendants. )

_____

ADAPTIX, INC., )                     Case No. 5:15-cv-00962-PSG

           Plaintiff, )       **ORDER GRANTING MOTIONS TO**
                      ) **DISMISS**

     v. )

AMAZON.COM, INC., et al., )           **(Re: Docket Nos. 15, 27)**

          Defendants. )

_____

ADAPTIX, INC., )                     Case No. 5:15-cv-00971-PSG

           Plaintiff, )       **ORDER GRANTING MOTION TO**
                      ) **DISMISS**

     v. )

DELL, INC., et al., )                **(Re: Docket No. 27)**

          Defendants. )

_____

ADAPTIX, INC., )                     Case No. 5:15-cv-00972-PSG

           Plaintiff, )       **ORDER GRANTING MOTIONS TO**
                      ) **DISMISS**

     v. )

SONY MOBILE COMMUNICATIONS (USA), )  **(Re: Docket Nos. 20, 26)**
INC., et al., )

          Defendants. )

_____

Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-
00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1    Of the many "reforms" enacted by Congress in 2011 with the America Invents Act, maybe

2    the most curious is the anti-joinder rule, codified at 28 U.S.C. § 299.  No longer can unrelated

3    accused infringers be bound in a single lawsuit "based solely on allegations that they each have

4    infringed the patent or patents in suit."[1]  Except where there are "questions of fact common to all,"

5    each defendant now gets its own complaint and case.

6    What makes this reform curious is that, since 2011, hardware manufacturers and software

7    developers have continued their march towards shorter release times for new products.  New

8    products are now released not every few years, but every few months, weeks or even days.  This

9    has meant that in most hardware and software patent cases, trial courts must decide whether to add

10   new products released before judgment is entered.  Where the court does not permit a patentee to

11   add new products, based on the patentee's lack of diligence or the prejudice to the accused

12   infringer, patentees often respond by filing new cases.

13   The convergence of these two trends is that where there once was one patent suit, there are

14   now two suits.  Or three.  Or, as here, dozens.

15   Defendants Apple Inc., HTC America, Inc., HTC Corporation, AT&T Mobility LLC,

16   Verizon Wireless, Amazon.com, Inc., Dell, Inc.[2] and Sony Mobile Communications (USA), Inc.

17   move to dismiss the seven newest cases that Plaintiff Adaptix, Inc. has filed for infringement of

18   United States Patent Nos. 6,947,748 and 7,454,212.  Defendant AT&T also separately moves for

19   judgment on the pleadings in two cases that have been pending since 2014.  Defendants say these

20   nine cases are duplicative of others against them that are pending before or previously adjudicated

21   by this court and are barred by claim preclusion, issue preclusion, the doctrine against claim

22

23

24

25

26   _____

     [1] 28 U.S.C. § 299(b).

27   [2] Because Dell was dismissed from Case No. 5:15-cv-00971 on June 8, 2015, *see* Docket No. 50,
     the motion as to Dell only is DENIED as moot.

28
                                                    3

splitting and the *Kessler* doctrine.[3]  Because the court agrees that these doctrines bar these follow-on cases, Defendants' motions are GRANTED.[4]

# I.

While the AIA and its anti-joinder rule are relatively new, fights over the preclusive effect of earlier patents suits are not.  In 1907, in *Kessler*, the Supreme Court first considered the limits on follow-on patent suits following a judgment of non-infringement.  The owner of a patent for an electric cigar lighter sued a competing seller of lighters for patent infringement in a first district court.[5]  The court found Kessler did not infringe Eldred's patent, and the Seventh Circuit affirmed.[6] Eldred then sued Kessler's customer in a second district court for infringing the same patent by selling the same Kessler lighters.[7]  Kessler responded by indemnifying his customer and suing Eldred in a third district court to enjoin Eldred from suing his customers.[8]  Based on the earlier judgment in the first district court, the third district court enjoined Eldred from his proceeding in the second district court, as requested.  Both the Seventh Circuit and the Supreme Court affirmed.[9]

The Supreme Court noted that claim and issue preclusion did not apply because there was no mutuality of parties and new acts of potential infringement may have occurred after the final judgment in the first case.[10]  But it nevertheless held that the first suit between Eldred and Kessler

---

[3] *See Kessler v. Eldred*, 206 U.S. 285 (1907).

[4] As explained further below, Defendants Apple Inc., HTC America, Inc., HTC Corporation, AT&T Mobility and Verizon Wireless will be referred to as the "Wave 3 Defendants" and Defendants Amazon.com, Inc. and Sony Mobile Communications (USA), Inc. will be referred to as the "Wave 4 Defendants."

[5] *Kessler*, 206 U.S. at 285.

[6] *See id.* at 286.

[7] *See id.*

[8] *See id.*

[9] *See id.* at 286, 289.

[10] *See, e.g.*, *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014) ("[T]raditional notions of claim preclusion do not apply when a patentee accuses new acts of infringement, i.e., post-final judgment, in a second suit—even where the products are the same in both suits.  Such

4

Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

fully settled Kessler's right "to manufacture, use, and sell the electric cigar lighter."[11]  A prior judgment of non-infringement in a "court of competent jurisdiction . . . is entitled to respect," and "whether it proceeds upon good reasons or upon bad reasons, whether it was right or wrong, settle[s] finally and everywhere" the claim of infringement.[12]  The Court emphasized that a patentee should not be able to harass another party by repeatedly filing infringement suits after receiving a final judgment of non-infringement.[13]  More recently, in *Brain Life v. Elekta*, the Federal Circuit explained that "[t]he *Kessler* Doctrine fills the gap between these preclusion doctrines, allowing an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result."[14]

Adaptix is the owner by assignment of the '748 and '212 patents, both entitled "OFDMA with adaptive subcarrier-cluster configuration and selective loading."  Both patents describe methods for subcarrier selection for wireless communication systems.  Subcarriers are narrow frequency bands over which wireless devices transmit data, as, for example, between a smartphone handset and the nearest base station for its cellular network.  "In one embodiment, a method for subcarrier selection comprises a subscriber measuring channel and interference information for subcarriers based on pilot symbols received from a base station, the subscriber selecting a set of candidate subcarriers, providing feedback information on the set of candidate subcarriers to the base station, and receiving an indication of subcarriers of the set of subcarriers selected by the base station for use by the subscriber."[15]

---

claims are barred under general preclusion principles only to the extent they can be barred by issue preclusion, with its attendant limitations.").

[11] *Kessler*, 206 U.S. at 287.

[12] *Id*. at 288.

[13] *See id.* at 290; *Brain Life, LLC*, 746 F.3d at 1055-56.

[14] *Id.* at 1056 (emphasis in original).

[15] Case No. 5:15-cv-00364: Docket Nos. 1-1, 1-2 at "Abstract."

Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13

Over the past three years, Adaptix has filed over 35 cases in multiple "waves" of litigation in this court and the Eastern District of Texas, alleging that LTE handset manufacturers and wireless carriers infringe its two patents.  Many, but not all of these cases were ultimately assigned to the undersigned.  As currently postured, these cases consist of four waves.  In Wave 1, Adaptix sued Motorola, Verizon, Apple, AT&T and HTC.[16]  In Wave 2, Adaptix sued Dell, Verizon, Amazon, AT&T, Blackberry, Sony, T-Mobile/MetroPCS, HTC, Sprint, ASUSTek, Boost Mobile and ZTE.[17]  In Wave 3, Adaptix filed four new cases against the same Wave 1 Defendants (with one exception)[18] after the court denied it leave to amend its infringement contentions in the Wave 1 cases.[19]  And a month after final judgment was entered in the Wave 1 cases, in Wave 4, Adaptix filed an additional three cases[20]—this time against Wave 2 Defendants whose cases were—and still are—pending before this court.[21]  In all four waves of cases, Adaptix has asserted direct and indirect infringement by 4G LTE products whose baseband processors are programmed to follow the same 3GPP LTE standard referred to as "CQI Reporting Mode 3."[22]

14
15

[16] *See* Case No. 5:13-cv-01774: Docket No. 1; Case No. 5:13-cv-01776: Docket No. 1; Case No. 5:13-cv-01777: Docket No. 1; Case No. 5:13-cv-01778: Docket No. 1; Case No. 5:13-cv-01844: Docket No. 1; Case No. 5:13-cv-02023: Docket No. 1.

16
17
18
19
20
21

[17] *See* Case No. 5:14-cv-01259: Docket No. 1; Case No. 5:14-cv-01379: Docket No. 1; Case No. 5:14-cv-01380: Docket No. 1; Case No. 5:14-cv-01385: Docket No. 1; Case No. 5:14-cv-01386: Docket No. 1; Case No. 5:14-cv-01387: Docket No. 1; Case No. 5:14-cv-02359: Docket No. 1; Case No. 5:14-cv-02360: Docket No. 1; Case No. 5:14-cv-02894: Docket No. 1; Case No. 5:14-cv-02895: Docket No. 1; Case No. 5:14-cv-03112: Docket No. 1; Case No. 5:15-cv-00165: Docket No. 1; Case No. 5:15-cv-00166: Docket No. 1; Case No. 5:15-cv-00167: Docket No. 1; Case No. 5:15-cv-00168: Docket No. 1.  Blackberry, Dell and ASUStek have settled and are no longer in the cases.  *See* Case No. 5:14-cv-01259: Docket No. 182; Case No. 14-cv-01380: Docket No. 113; Case No. 14-cv-01386: Docket No. 120; Case No. 14-cv-01387: Docket No. 117; Case No. 14-cv-03112: Docket No. 137.

22
23

[18] *See* Case No. 5:15-cv-00364: Docket No. 1; Case No. 5:15-cv-00365: Docket No. 1; Case No. 5:15-cv-00366: Docket No. 1; Case No. 5:15-cv-00367: Docket No. 1.  The exception is Motorola, who by this time had settled.  *See* Case No. 5:13-cv-01774: Docket No. 195.

24

[19] *See* Case No. 5:13-cv-01776: Docket No. 252.

25

[20] *See* Case No. 5:15-cv-00962: Docket No. 1; Case No. 5:15-cv-00971: Docket No. 1; Case No. 5:15-cv-00972: Docket No. 1.

26

[21] As noted earlier, Dell later settled.  *See* Case No. 5:15-cv-00971: Docket No. 49.

27
28

[22] Some of the claims and products asserted in the Wave 3 and Wave 4 cases had been pleaded in the Wave 1 and Wave 2 cases but were omitted from Adaptix's infringement contentions.  When

Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS

After a long, hard slog through fact and expert discovery in the Wave 1 cases, the court ultimately granted Defendants' motions for summary judgment of noninfringment and invalidity. The court first held that under the Federal Circuit's decision in *Ericsson, Inc. v. D-Link Systems, Inc.*,[23] even if they supply handsets preprogrammed to perform multiple claimed steps, Defendants still must perform at least one step of a claimed method themselves to be held liable for direct infringement. Because there was no genuine dispute that Defendants perform no such step, no reasonable jury could find that Defendants directly infringed.[24] The court then held that the term "each cluster"—as it appears in claims 8 and 9 of the '748 patent and claims 9 and 10 of its '212 patent—is indefinite because the "each cluster" term "might mean several different things and no informed and confident choice is available among the contending definitions."[25]

A short while later, the court entered final judgment in favor of the Wave 1 Defendants:

> The Court enters final judgment in favor of [Defendants] and against [P]laintiff Adaptix, Inc. [] on all of Adaptix's claims for infringement of U.S. Patent No. 7,454,212 [] and U.S. Patent No. 6,947,748 []. Plaintiff shall take nothing by way of its complaint.
>
> In addition, claims 9 and 10 of the '212 patent and claims 8 and 9 of the '748 patent are adjudged invalid. Defendants' counterclaims with respect to all other patent claims of the '212 patent and '748 patent are hereby dismissed without prejudice.[26]

The Wave 3 and Wave 4 Defendants now move to dismiss their cases pursuant to Fed. R. Civ. P. 12(b)(6) on the basis of claim preclusion, the *Kessler* doctrine, issue preclusion and the

---

Adaptix moved for leave to amend, the court denied the motion. *See* Case No. 5:13-cv-01776: Docket No. 252; Case No. 5:14-cv-01379: Docket No. 123.

[23] 773 F.3d 1201 (Fed. Cir. 2014).

[24] *See* Case No. 5:13-cv-01776: Docket No. 405 at 2-3.

[25] *See* Case No. 5:13-cv-01776: Docket No. 413 at 2.

[26] Case No. 5:13-cv-01776: Docket No. 419. As is its right, Adaptix has appealed both rulings. *See* Case No. 5:13-cv-01776: Docket No. 440. "The established ruled in the federal courts is that a final judgment retains all of its [claim preclusion] consequences pending decision of the appeal." *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988); *see also Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1439 (9th Cir. 1985) ("The federal rule on the preclusive effect of a judgment from which an appeal has been taken is that the pendency of an appeal does not suspend the operation of an otherwise final judgment for purposes of [claim preclusion].").

7

United States District Court
For the Northern District of California

1  doctrine against claim splitting.  In Wave 2, AT&T also moves to dismiss the cases against it

2  pursuant Fed. R. Civ. P. 12(c).[27]

3                                                    **II.**

4          This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.  The parties further

5  consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and

6  Fed. R. Civ. P. 72(a).

7          As a preliminary matter, Defendants request judicial notice of court records from the Wave

8  1 cases.  On a motion to dismiss, "the Court may take judicial notice of 'matters of public record,'"

9  such as court records, "without converting the motion into one for summary judgment."[28]  The

10  court may take judicial notice of a "fact that is not subject to reasonable dispute because it is

11  generally known" or "can be accurately and readily determined from sources whose accuracy

12  cannot reasonably be questioned."[29]  As Adaptix does not dispute the request, the court takes

13  judicial notice of the Wave 1 court records.

14         At this stage of the case, the court must accept all material allegations in the complaint as

15  true and construe them in the light most favorable to the non-moving party.[30]  The court's review is

16  limited to the face of the complaint, materials incorporated into the complaint by reference and

17

18  ─────────────────

18  [27] In a subset of the Eastern District of Texas cases, Judge Craven recently issued a report and

19  recommendation to the presiding judge that summary judgment be entered in favor of the carrier

19  and manufacturer defendants based on this court's summary judgment order as to the '212 patent.

20  Judge Craven based her finding on the doctrines of claim preclusion, issue preclusion and the

20  *Kessler* doctrine.  *See Adaptix, Inc. v. AT&T Mobility LLC, et. al.*, Case No. 6:12-cv-00017: Docket

21  No. 363 (recommending that "(1) issue preclusion bars Adaptix from arguing (a) that any

21  Defendant directly infringes the method claims of the '212 patent by selling LTE devices" and

22  "(b) that AT&T and Verizon directly infringe the method claims of the '212 patent by controlling

22  the use of their respective customers' LTE devices;" "(2) claim preclusion bars all of Adaptix's

23  claims against AT&T and Verison for infringement of the '212 patent" and "(3) the *Kessler*

23  Doctrine bars all of Adaptix's claims against AT&T and Verizon for infringement of the '212

24  patent.").

25  [28] *Moralez v. Whole Foods Mkt., Inc.*, 897 F. Supp. 2d 987, 996 (N.D. Cal. 2012); *see also Mack v.
South Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

26  [29] Fed. R. Evid. 201(b).

27  [30] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

28

Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-
00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

1    matters of which the court may take judicial notice.[31]   However, the court need not accept as true

2    allegations that are conclusory, unwarranted deductions of fact or unreasonable inferences.[32]

3            Under Rule 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the

4    absence of sufficient facts alleged under a cognizable legal theory."[33]   If a plaintiff fails to proffer

5    "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed

6    for failure to state a claim upon which relief may be granted.[34]   A claim is facially plausible "when

7    the pleaded factual content allows the court to draw the reasonable inference that the defendant is

8    liable for the misconduct alleged."[35]   Dismissal is warranted where, even accepting all the

9    allegations in the complaint as true, a complaint cannot state a plausible claim for relief because

10    claim preclusion bars the cause of action alleged.[36]   A party may properly raise preclusion defenses

11    on a motion under Rule 12(b)(6).[37]   The same standards apply to motions under Rule 12(c),[38]

12    which may be brought "[a]fter the pleadings are closed—but early enough not to delay trial."[39]

---

[31] *See id.*

[32] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[33] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[34] *Twombly*, 550 U.S. at 570.

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[36] *See, e.g.*, *D-Beam v. Roller Derby Skate Corp.*, 316 F. App'x 966, 968-69 (Fed. Cir. 2008) (affirming dismissal of complaint for failure to state a claim, based on applications of claim preclusion; "attempt to revive" suit by adding new defendants "fails as they are clearly in privity" with prior defendant, and "new claim of patent infringement should have been brought in [prior] action"); *Holcombe v. Hosmer*, 447 F.3d 1094, 1100 (9th Cir. 2007) (affirming dismissal of complaint for failure to state a claim based on application of claim preclusion); *Klahn v. Quizmark, LLC*, Case No. 13-cv-01977, 2013 WL 4605873, at *3 (N.D. Cal. Aug. 28, 2013) (same).

[37] *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984); *Evarts v. W. Metal Finishing Co.*, 253 F.2d 637, 639 (9th Cir. 1958).

[38] *See Cafasso v. Gen. Dynamics CF Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011); *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

[39] *Lyon v. Chase Bank USA, NA*, 656 F.3d 877, 883 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).

Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS

With trial well off in the Wave 2 cases, the court finds it proper to consider AT&T's Rule 12(c) motion together with the Wave 3 and Wave 4 Defendants' motions under Rule 12(b)(6). Applying these rules' "functionally identical" standards,[40] the court is persuaded that Adaptix's allegations in each of these cases are an improper redo of those it brought before.

### III.

"If rights between litigants are once established by the final judgment of a court of competent jurisdiction those rights must be recognized in every way, and wherever the judgment is entitled to respect, by those who are bound by it."[41]  Between the final judgment in the Wave 1 cases and the similar scope of the cases in Wave 2, Adaptix's claims in the follow-on waves cannot stand.

*First*, Adaptix's Wave 3 cases are barred by the doctrine of claim preclusion.  The basic tenet of claim preclusion is that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."[42]  Claim preclusion requires parties to bring all available claims in one action, preventing parties from improperly splitting their claims and harassing defendants and courts with "repetitive actions based on the same claim."[43]  The purpose of claim preclusion "is to 'relieve parties of the cost and vexation of multiple law suits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'"[44]

In the Ninth Circuit, claim preclusion bars an action where a prior suit: (1) reached a final judgment on the merits; (2) involved the same parties (or their privies) and (3) involved the same

---

[40] *Id.* (quoting *Dworkin*, 867 F.2d at 1192).

[41] *Kessler*, 206 U.S. at 289.

[42] *Montana v. United States*, 440 U.S. 147, 153 (1979).

[43] *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 328 (9th Cir. 1995); *see also Adobe Sys. Inc. v. Wowza Media Sys., LLC*, Case No. 14-cv-02778, 2014 WL 5454648, at *3 (N.D. Cal. Oct. 27, 2014).

[44] *Marin v. HEW, Health Care Fin. Agency*, 769 F.2d 590, 594 (9th Cir. 1985) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

claim or cause of action.[45] While disputes over claim preclusion are generally resolved according to the law of the regional circuit, in patent cases, the second factor—whether both suits involve the same claim or cause of action—is governed by Federal Circuit law.[46]

As to the first prong, the court plainly issued a final judgment on the merits in the Wave 1 cases.[47] While such a fact would usually be undisputed, here, Adaptix parses each of the four orders this court issued as to Defendants' motions for summary judgement to suggest that the judgment did not really dispose of all issues relating to the prior cases because the court did not invalidate all claims or find non-infringement as to all claims. For example, the court held that a reasonable juror could find that an end user of the Apple or HTC devices infringes even though Adaptix produced no evidence that any individual acting on Verizon's behalf infringes.[48] As another example, the court found that a reasonable jury could find that the Apple and HTC products infringe based on evidence in the record that suggests the products meet all the limitations of the asserted claims.[49]

But in *Brain Life*, the court specifically rejected such a premise, barring the assertion of method claims against Elekta even though the prior suit against Elekta had produced only a judgment of noninfringement of apparatus claims in the same patent.[50] "While the dismissal without prejudice allowed for the possibility that acts of infringement of the method claims could be subject to a future cause of action, that possibility was cut-off for all such acts predating the

---

[45] *See Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005); *Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 997 (N.D. Cal. 2007), *aff'd*, 531 F.3d 1372 (Fed. Cir. 2008).

[46] *See Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008).

[47] *See* Case No. 5:13-cv-01776: Docket No. 419 ("The Court enters final judgment in favor of [Defendants] and against [P]laintiff Adaptix, Inc. [] on all of Adaptix's claims for infringement of U.S. Patent No. 7,454,212 [] and U.S. Patent No. 6,947,748 [].").

[48] *See* Case No. 5:13-cv-01776: Docket No. 405.

[49] *See* Case No. 5:13-cv-01776: Docket No. 403.

[50] *See Brain Life, LLC*, 746 F.3d at 1058 (holding Elekta's earlier judgment of noninfringement on other theories enough to confer upon it the status of a non-infringer and give its products "the status of noninfringing products").

Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS

final MIDCO judgment once that judgment was entered."[51]   Put another way, it is sufficient that

the court entered summary judgment on some theories to bar all other theories that were or could

have been brought.  Consistent with this, the court entered final judgment in favor of Defendants

and against Adaptix "on all of Adaptix's claims" for infringement of the '212 and '748 patents.

The court could not have been any clearer.

As to the second prong, it is undisputed that the Wave 1 Defendants and the Wave 3

Defendants are one and the same and that Adaptix is the sole plaintiff in both sets of cases.  To the

extent that Adaptix also sued "John Does" in the Wave 3 cases that were not present in the Wave 1

cases, Adaptix has identified the John Does as "customers of [Wave 3 Defendants] who have

purchased or have been provided and have used the [accused products]."[52]

This raises the question of whether the John Does are in privity with the Wave 3

Defendants.  In the Ninth Circuit, privity analysis for the purposes of claim preclusion is focused

on the alignment of interests between parties; in short, "privity may exist if 'there is substantial

identity between parties, that is, when there is sufficient commonality of interest.'"[53]   Here, the

John Does—as customers of the Wave 3 Defendants— are shielded from the new action through

privity because during the Wave 1 cases, Adaptix was fully aware that customers like the John

Does existed, were in possession of the allegedly infringing devices and were operating those

devices on carrier Defendants' LTE networks, yet failed to bring claims against them.  Adaptix

makes no colorable argument to the contrary.

As to the third prong, the Wave 3 cases constitute the same claim or cause of action as the

previously-adjudicated Wave 1 cases.  To determine whether the same cause of action is present

for purposes of claim preclusion in the patent infringement context, the Federal Circuit considers

---

[51] *Id.*

[52] *See, e.g.*, Case No. 5:15-cv-00364: Docket No. 1 at ¶ 4.

[53] *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) (quoting *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983)); *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir. 1980) ("Courts are no longer bound by rigid definitions of parties or their privies for purposes of applying [claim preclusion].").

Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

two factors: (1) whether "the same patents are involved in both suits" and (2) whether the accused "products or processes" in the suits are the same or "essentially the same."[54]  It is undisputed that the same patents—the '212 and the '748—are involved in the Wave 1 and the Wave 3 cases.  It also is undisputed that devices that were accused in the Wave 1 cases have also been accused in the Wave 3 cases.[55]  The only true dispute remaining is whether the new products that Adaptix added in the Wave 3 cases—products that were not even on the market during the pendency of Wave 1— are "essentially the same" such to bar Adaptix's Wave 3 infringement claims.[56]

        The Federal Circuit addressed this very issue in *Nystrom v. Trex Co*., ultimately holding that newer versions of previously accused devices are "essentially the same" if they are materially unchanged with respect to the plaintiff's infringement contentions.[57]  In *Nystrom*, the court entered final judgment of non-infringement of Nystrom's patent for outdoor wood-flooring boards.[58]  Nystrom subsequently filed a second action against Trex under the doctrine of equivalents, accusing a new line of wood-flooring boards.[59]  Nystrom justified the second suit by arguing that this new line could not have been raised in the previous action because they were not commercially available until over a year after final judgment in the previous action.[60]  But the Federal Circuit did

---

[54] *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1349 (Fed. Cir. 2014) (emphasis omitted).

[55] Adaptix accused the Apple iPad with Retina Display, iPad 3, iPad Mini, iPad Mini with Retina Display, iPad Air, iPhone 5, iPhone 5c, iPhone 5s, HTC Droid DNA, HTC Droid Incredible 4G, HTC Rezound, HTC One, HTC One Max and HTC Thunderbolt, as well as the AT&T and Verizon LTE networks in both the Wave 1 and Wave 3 cases.  *See* Case No. 5:15-cv-00365: Docket No. 27-3 at 5.

[56] Adaptix accused the Apple iPad Air 2, iPad Mini 3, iPhone 6, iPhone 6 Plus, HTC Desire 612, HTC One Remix and HTC One for the first time in the Wave 3 cases.  *See id*.

[57] *See* 580 F.3d 1281, 1283 (Fed. Cir. 2009); *see also Hallco Manufacturing Co. v. Foster*, 256 F.3d 1290, 1297-98 (Fed. Cir. 2001) (remanding for analysis of similarity for claim preclusion purposes between earlier-accused product and a product produced through a redesign conducted after conclusion of first suit); *Foster v. Hallco Manufacturing Co.*, 947 F.2d 469, 480 (Fed. Cir. 1991) (announcing "essentially the same" standard and remanding to district court for claim preclusion analysis in case where new version of previously-accused device was produced years after the initial action concluded).

[58] *See id.*

[59] *See id.*

[60] *See id.*

Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

not buy that.  "Where an accused infringer has prevailed in an infringement suit, 'the accused devices have the status of noninfringements, and the defendant acquires the status of a noninfringer to that extent.'"[61]  The court then held that even if the two lines of boards were not identical in all respects, they remained unchanged as to the claim limitations at issue in the first suit.[62]

This case is no different.  Now, as then, the accused functionality is based on the 3GPP LTE industry standard.  Adaptix itself admitted in its infringement contentions that "[t]he Accused Products are based on the LTE chipset and have no material differences among them for purposes of Plaintiff's infringement analysis."[63]  Adaptix has not suggested to the court that its Wave 3 cases accuse any functionalities that are substantially different from those accused in the Wave 1 cases. Indeed, Adaptix argues instead that claim preclusion does not apply for two reasons: (1)  because claim preclusion does not extend to new acts of infringement post-final judgment and (2) because claim preclusion does not bar new rights that arise post-judgment from new acts of infringement. Both arguments, however, fail as a matter of law.

As to the first, Adaptix relies on *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.* for the proposition that traditional notions of claim preclusion do not apply when a patentee accuses new acts of infringement, i.e., post final judgment, in a second suit, even where the products are the same in both cases.[64]  Adaptix thus posits that *Nystrom* is inapplicable because this more recent case holds otherwise.  But the Federal Circuit never expressly overruled *Nystrom*.  And so unless and until the Federal Circuit sits en banc to resolve any inconsistency between the principles elaborated in *Nystrom* and those of *Aspex*, the earlier ruling trumps.[65]  Other courts have adhered to

---

[61] *Id.* at 1285 (quoting *Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1316 (Fed. Cir. 1953)).

[62] *See id.* at 1283.

[63] *See, e.g.*, Case No. 5:13-cv-01776: Docket No. 431-5 at 2 n.1.

[64] *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1342 (Fed. Cir. 2012). Adaptix also points to a similar holding in *Brain Life, LLC*, 746 F.3d at 1054.

[65] *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) (adopting "the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned [e]n banc"); *Deckers Corp. v. United States*, 752 F.3d 949, 965 (Fed. Cir. 2014) ("At most, opinions expressed by . . . a subsequent panel regarding an earlier Federal Circuit panel

Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS

---

United States District Court
For the Northern District of California

1    the *Nystrom* application of claim preclusion on this very basis.[66]  This court sees no reason not to

2    do the same.

3         As to the second, Adaptix's reading of *Gillig v. Nike, Inc.* is entirely off the mark.  Adaptix

4    correctly points out that the Federal Circuit in *Gillig* reasoned that claim preclusion "does not apply

5    to new rights acquired during the action which might have been, but which were not litigated."[67]

6    But there are no new rights at issue in this set of cases.  By suing Defendants for patent

7    infringement on the '212 and '748 patents, Adaptix asserted its patent property rights in the Wave

8    1 cases.  Those patent property rights—even in the face of new acts of infringement—do not

9    change.  Indeed Adaptix is trying to assert the very same rights in the Wave 3 cases that it already

10   asserted—and based on which a final judgment was entered in the Wave 1 cases.  This is exactly

11   what the doctrine of claim preclusion seeks to prohibit.  And *Gillig* certainly does not allow it.

12        In the end, all infringement theories and patent claims that could have been brought in the

13   Wave 1 cases are precluded in the Wave 3 cases.[68]  As in *Nystrom*, Adaptix brought a second set of

14   cases "to have a second bite at the apple" on three types of claims: those it failed to bring

15   altogether, those it dropped voluntarily and those that were not permitted late in the game in the

16   Wave 1 cases.[69]  Because Adaptix's Wave 3 claims are precluded in their entirety, the Wave 3

17   cases are dismissed.

---

18   decision would constitute invitations to the en banc court to revisit the legal issue raised," and to
19   the extent such an opinion purports to do more, "we would be bound to ignore it.").

20   [66] *See, e.g.*, *Mentor Graphics Corp. v. EVE-USA, Inc.*, Case No. 10-cv-00954, 2014 WL 2533336,
21   at *1 (D. Or. June 4, 2014) ("[T]he *Foster* line of cases cannot be reconciled with *Aspex* and *Brain
     Life*.  Because one three-judge panel cannot overrule another, *Foster* controls until the Federal
22   Circuit sitting *en banc* says otherwise.").

22   [67] *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1363 (Fed. Cir. 2010).

23   [68] *See Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 1371 (Fed. Cir.
24   2013) (claim preclusion extends to all grounds for recovery that were "previously available to the
     parties, regardless of whether they were asserted or determined in the prior proceeding.").

25   [69] *Nystrom*, 580 F.3d at 1286 ("Nystrom made a tactical decision in his initial suit to forego any
26   infringement theory based on the doctrine of equivalents.  That choice did not pay off.  Given that
27   the Trex II boards remain materially identical to the Trex I boards with respect to the pertinent
     claim limitations at issue, this court cannot under [claim preclusion] permit Nystrom [] to have a
     second bite at the apple.").

28

Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-
00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS

1    **Second**, the Wave 3 cases also are independently barred under *Kessler*.  As noted earlier, in

2    *Kessler v. Eldred*, the Supreme Court prohibited subsequent patent infringement suits against a

3    defendant or its customers asserting the same patent against devices that are "essentially the same"

4    as those accused in a prior suit and in which the defendant obtained a judgment of non-

5    infringement.[70]  Essentially, *Kessler* held that once an accused product is deemed non-infringing, it

6    maintains that status from the time of final judgment forward.[71]

7         The principal dispute here appears to be whether *Kessler* still applies or whether it has

8    somehow grown stale.  Despite Adaptix's pleas to the contrary, *Kessler* is still alive and well.[72]

9    The Federal Circuit recently applied *Kessler* in *Brain Life v. Elekta*, holding that the *Kessler*

10   doctrine barred Brain Life's suit with respect to a newer set of products because they were

11   "essentially the same" as the previously-accused products.[73]  In *Brain Life*, Brain Life's

12   predecessor MIDCO had sued Elekta, accusing three of its products of infringing.[74]  After the court

13   entered a judgment of non-infringement, Brain Life acquired MIDCO's patent rights and brought

14   its own suit against Elekta, accusing new versions of the previously-accused products and bringing

15   method claims that had been abandoned in the prior lawsuit.[75]  The Federal Circuit barred the

16   second suit, holding that the products were "essentially the same" as those in the first suit, and that

17   because the method claims "were brought or could have been brought in the first suit," the method

18   claims also were out.[76]

---

19   [70] *See Kessler*, 206 U.S. at 285.

20   [71] *See id.* at 288 ("This judgment, whether it proceeds upon good reasons or upon bad reasons,
21   whether it was right or wrong, settled finally and everywhere, and so far as Eldred . . . was
22   concerned, that Kessler had the right to manufacture, use, and sell the electric cigar lighter before
     the court.").

23   [72] *See Speedtrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1324 (Fed. Cir. 2015) (reaffirming
     "the continued vitality of the *Kessler* doctrine").

24   [73] *See Brain Life, LLC*, 746 F.3d at 1058.

25   [74] *See id.* at 1051.

26   [75] *See id.*

27   [76] *See id.* at 1058-59.

28

                                          16

As discussed above, the Wave 3 cases fall squarely within the contours of *Kessler*. All of the products at issue either were accused in the Wave 1 cases or are "essentially the same" as those brought in the Wave 1 cases. And any and all theories brought in the Wave 3 cases "were brought or could have been brought in the first suit."[77] Adaptix counters that *Kessler* gives an accused infringer rights "with respect to specific products that had been held to be non-infringing." And because this court issued certain orders on summary judgment allowing questions of infringement to go before a jury, Adaptix now argues that this court never found that the accused products had obtained "the status of non-infringing device[s]."[78] But this reasoning is contrary to the Federal Circuit's holding in *Brain Life*, where the court barred the assertion of method claims in the new suit even though the prior suit only produced a judgment of noninfringement of apparatus claims of the same patent.[79] Here, as in *Brain Life*, this court's earlier judgment of noninfringement is enough to confer upon the Wave 1 Defendants—who mirror the Wave 3 Defendants—the status of non-infringers and to give their products the status of non-infringing products.

***Third***, issue preclusion independently bars Adaptix's claims for direct infringement of the method claims as to Verizon.[80] There are three requirements for issue preclusion: "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action."[81] In the Wave 1 cases, the court held: (1) Verizon does not

---

[77] To the extent Adaptix may protest that it could not have brought certain theories because the court denied it leave to amend those theories, the court's findings rested on lack of diligence. *See* Case No. 5:13-cv-01776: Docket No. 252. Adaptix's inability to bring those theories thus was of its own making. *See Nystrom*, 580 F.3d at 1286.

[78] *Brain Life, LLC*, 746 F.3d at 1053.

[79] *See id.* at 1050.

[80] Verizon is the only Defendant that moved on the basis of issue preclusion at this time.

[81] *Nazomi Commc'ns, Inc. v. Nokia Corp.*, Case Nos. 10-cv-04686, 10-cv-05545, 2013 U.S. Dist. LEXIS 85618, at *23 (N.D. Cal. June 18, 2013) (quoting *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996)). *See also In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000); *Tecsec, Inc. v. IBM Corp.*, 731 F.3d 1336, 1341 (Fed. Cir. 2013).

Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  directly infringe the method claims of the '212 and '748 patents by selling LTE devices,

2  (2) Verizon does not directly infringe the method claims of the '212 and '748 patents by

3  controlling the use of its customers' LTE devices and (3) no individual acting on behalf of

4  Verizon—ostensibly a Verizon employee—has used an accused device to perform any claimed

5  method.[82]  These identical issues were raised in Adaptix's Wave 3 complaint, which broadly

6  covers direct and indirect infringement by Verizon of all asserted claims of the '212 and '748

7  patents.  The court's rulings on these issues were the result of an extensive set of briefings and oral

8  argument on summary judgment, leaving no question that the issues were actually litigated in full.

9  And it was on the basis of the court's summary judgment rulings that the parties agreed that no trial

10  in the case was necessary and submitted a proposed form of judgment to the court; these findings

11  were the primary basis for entry of final judgment.

12       Adaptix takes real issue only with the scope of issue preclusion as to Verizon's employee

13  use of the accused devices.  Specifically, Adaptix argues that issue preclusion cannot bar future

14  employee use because the court's ruling was based on a lack of evidence, rather than on a

15  determination that no such use occurred.[83]  Adaptix posits that it will provide such evidence in the

16  Wave 3 cases.[84]  The court agrees with Adaptix that any employee use after the date of final

17  judgment in the Wave 1 cases is not barred by issue preclusion.  But regardless, as discussed

18  above, it nevertheless is barred by claim preclusion and the *Kessler* doctrine.

19       ***Fourth***, claim splitting bars Adaptix's claims against Sony and Amazon in the Wave 4

20  cases.  The "main purpose behind the rule preventing claim splitting is 'to protect the defendant

21  from being harassed by repetitive actions based on the same claim.'"[85]  In the Ninth Circuit, the

22

23  [82] *See* Case No. 5:13-cv-01776: Docket No. 405 at 6-8.  Where "the court rests its judgment
alternatively upon two or more grounds, the judgment concludes each adjudicated issue that is
24  necessary to support any of the grounds upon which the judgment is rested."  *In re Westgate-
California Corp.*, 642 F.2d 1174, 1176 (9th Cir. 1981).

25  [83] *See* Case No. 5:15-cv-00364: Docket No. 34 at 14-15.

26  [84] *See id.* at 15.

27  [85] *Clements*, 69 F.3d at 328 (internal citations omitted).

28

Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-
00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

test for claim splitting mirrors that for claim preclusion.[86]   To that end, the question here is—assuming that the prior suit were finally decided—whether the same parties or their privies to the later suit were involved in the prior litigation and whether the prior litigation involved the same claim or cause of action as the later suit.[87]   While issues of claim preclusion or claim splitting are generally governed by the law of the regional circuit, once again, in patent cases, the second factor—whether both suits involve the same cause of action—is governed by Federal Circuit law.[88]

As to the first factor, Sony, Amazon and Adaptix are parties to both the Wave 2 and the Wave 4 cases.  And as discussed above, to the extent that Adaptix adds "John Doe" Defendants, they are in privity with Sony and Amazon such that claim splitting applies to the cases as asserted against the John Does as well.[89]

As to the second factor, just as with claim preclusion, it is met when the same patents are asserted in both suits and "the accused device in the action before the court is 'essentially the same' as the accused device in a prior action between the parties that was resolved by a judgment on the merits."[90]   The causes of action are the same even if different infringement theories are asserted in the two suits.[91]

---

[86] *See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688-89 (9th Cir. 2007).

[87] *See Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, Case No. 13-cv-03677, 2013 WL 10448869, at *2 (N.D. Cal. Oct. 22, 2013) (quoting *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002)); *see also Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001); *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1059 (S.D. Cal. 2007) (noting that in the context of claim-splitting, "no final judgment on the merits is required.  Instead, what is required in the context of a claim-splitting analysis is to assume that the first suit was final, and then determine if the second suit could be precluded.").

[88] *See Acumed LLC*, 525 F.3d at 1323 (Fed. Cir. 2008).

[89] *See Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1081; *ITT Rayonier, Inc.*, 627 F.2d at 1003 ("Courts are no longer bound by rigid definitions of parties or their privies for purposes of applying [claim preclusion].").

[90] *Acumed LLC*, 525 F.3d at 1324.

[91] *Nystrom*, 580 F.3d at 1286.

United States District Court
For the Northern District of California

1    The case here is factually analogous to *Icon-IP*, where the court found that the doctrine of

2    claim-splitting barred a second suit in a patent infringement case.[92]  In the first case, Icon alleged

3    that Specialized infringed the patents by manufacturing and selling various bicycle seat models.[93]

4    Nearly a year after filing its complaint in Icon I, Icon moved for leave to amend its infringement

5    contentions to add new bicycle seat models that Icon alleged infringe in the same manner as the

6    originally-accused seats.[94]  The court denied Icon's request because Icon had not been diligent in

7    moving for leave to amend its infringement contentions.[95]  Shortly after this ruling, Icon filed a

8    new case, in which Icon alleged that Specialized infringed the same patents by manufacturing and

9    selling the bicycle seat models that the court had excluded from Icon I.[96]  Specialized moved to

10   dismiss, arguing that the complaint in Icon II was barred by the prohibition against claim-

11   splitting.[97]  The court granted the motion because the complaint in Icon II alleged infringement of

12   the same patents by the same defendant based on accused devices that were "essentially the

13   same."[98]

14       The Wave 4 cases are no different.  In the Wave 2 cases, the court denied Adaptix leave to

15   amend its infringement contentions to add new devices—the Amazon Fire Phone and the Sony

16   VAIO Duo 13—and the induced and contributory infringement theories it had included in its

17   original complaint but had omitted from its initial infringement contentions.[99]  Shortly thereafter,

18   Adaptix filed new cases against Amazon and Sony alleging direct, induced and contributory

19   infringement of the same patents—the '212 and '748 patents—against the same products: the

---

[92] *See Icon-IP Pty Ltd.*, 2013 WL 10448869, at *2.

[93] *See id.*

[94] *See id.* at *2-3.

[95] *See id.* at *3.

[96] *See id.*

[97] *See id.* at *4-5.

[98] *See id.* at *5-11.

[99] *See* Case No. 5:14-cv-01379: Docket No. 123 at 3, 5.

20

United States District Court
For the Northern District of California

1   Amazon Kindle Fire, Amazon Fire Phone, the Sony XPERIA TL, the Sony XPERIA ION and the

2   Sony VAIO Duo 13.  Because the patents, products and theories in the Wave 4 cases mirror those

3   in the Wave 2 cases, the newer cases are barred by claim splitting.

4           As to the theories that Adaptix sought but failed to add to the Wave 2 cases and are now

5   realleged in the Wave 4 cases—contributory and indirect infringement—claim splitting bars those

6   theories as well.  "To the extent the New Complaint includes new theories of infringement, if any,

7   with respect to the same patents and the same accused products already at issue in [pending

8   actions], . . . the new claims [are] barred by the doctrine of claim splitting."[100]  Any claims that

9   Adaptix brought or could have brought in the Wave 2 cases have no place in this new set of

10  cases.[101]

11          As to the products that Adaptix failed to bring into the Wave 2 cases diligently and thus

12  was denied leave to add to the case, claim splitting precludes relitigating products that are the same

13  or "essentially the same" as the products at issue in the earlier suit.[102]  As discussed above in

14  relation to claim preclusion, Adaptix's claims of infringement are based on the accused products'

18  [100] *Fujitsu Ltd. v. Tellabs Operations, Inc.*, Case No. 12-cv-03229, 2013 WL 361810, at *3 (N.D.
19  Ill. Jan. 30, 2013); *see also Vigil v. The Walt Disney Co.*, Case No. 02-cv-04002, 2003 WL
    22016805, at *5 (N.D. Cal. Aug. 5, 2005).  Allegations of different claims of the same patent are
20  similarly barred by claim splitting.  *See Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.*, Case No.
    05-cv-00860, 2005 WL 1869342, at *2-3 (N.D. Cal. Aug. 5, 2005).

21  [101] *See id.* at *2-3 ("[A] patent plaintiff should not be permitted to avoid the adverse consequences
22  of failing [to] assert all patent claims in a pending action by simply filing a new patent action.  This
    Court agrees with that conclusion.  Otherwise, this Court's express requirements governing patent
23  litigation and, in particular, preliminary infringement contentions, would be totally eviscerated.  If
    it were to permit Biogenex to assert claim 5 of the '452 patent in the Second Action, the Court
24  almost certainly would consolidate or at least relate the two actions for purposes of judicial
    economy, as they involve the same patents and the same accused conduct.  Were that to happen, all
25  of the efforts of the Court and the parties relating to litigation of the '452 patent in the First Action,
    including the question of whether Biogenex should be permitted to assert claim 5 in that action,
26  would be negated.  Biogenex essentially would have obtained a reversal of the Court's ruling in the
    First Action.").

27  [102] *See Nystrom*, 580 F.3d at 1285-86.

28
                                            21
    Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-
    00962; -00971; -00972
    ORDER GRANTING MOTIONS TO DISMISS

employment of the LTE standard, which Adaptix itself admits are "identical" across the cases.[103]
The Wave 4 cases simply do not raise anything new.  They are dismissed.[104]

## IV.

In sum, under the theories of claim preclusion and the *Kessler* doctrine, the Wave 3 cases must be dismissed.[105]  Adaptix's claims for direct infringement of the method claims against Verizon also must be dismissed under the theory of issue preclusion.  Additionally, the Wave 4 cases must be dismissed as barred by the doctrine against claim splitting.

**SO ORDERED.**

Dated: August 21, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[103] *See* Case No. 5:14-cv-01379: Docket No. 115 at 2.

[104] Sony and Amazon also challenge the Wave 4 cases as an improper collateral attack.  Because the court has already disposed of the matter in full based on claim splitting, the court does not reach the issue of collateral attack.

[105] This ruling also extends to Adaptix's claims against AT&T in Case Nos. 5:15-cv-00962 and 5:15-00972 and against Verizon in Case No. 5:15-cv-00971.

22
Case Nos. 5:14-cv-01379-PSG; -01385; 5:15-cv-00364-PSG; -00365; -00366; -00367; 5:15-cv-00962; -00971; -00972
ORDER GRANTING MOTIONS TO DISMISS