1  *[Counsel Listed on Signature Block]*

2  **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
3  **SAN JOSE DIVISION**

| | |
|---|---|
| 4  ADAPTIX, INC., <br>        Plaintiff, | |
| 5 | Case No. 5:14-cv-01379-PSG |
| 6  v. | Judge: Honorable Paul S. Grewal <br> Hearing Date: October 13, 2015, at |
| 7  AMAZON.COM, INC., and <br> AT&T MOBILITY LLC, <br>        Defendants. | 10:00 am <br> Courtroom 5, 4th Floor |
| 8  ADAPTIX, INC., <br>        Plaintiff, | |
| 9 | Case No. 5:14-cv-01385-PSG |
| 10  v. | Judge: Honorable Paul S. Grewal <br> Hearing Date: October 13, 2015, at |
| 11  SONY MOBILE COMMUNICATIONS (USA) <br> INC., and AT&T MOBILITY LLC, <br>        Defendants. | 10:00 am <br> Courtroom 5, 4th Floor |

12

13  <u>**NOTICE OF MOTION AND MOTION FOR CLARIFICATION**</u>

14  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

15  **PLEASE TAKE NOTICE** that, on October 13, 2015 at 10:00 a.m., or at any other date and

16  time as the Court may order, before the Honorable Paul S. Grewal, in Courtroom 5, Robert F.

17  Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, CA 95113,

18  Plaintiff, ADAPTIX, Inc. ("Adaptix") will move the Court for Clarification of its August 21, 2015

19  Order.  Dkt. 142. [1]

20      This motion is based on this Notice of Motion and the Motion, and such other matters as the

21  Court may deem appropriate in deciding this Motion.  By this Motion, as addressed in detail below,

22  Adaptix seeks clarification of the Court's August 21, 2015 Order as it pertains to whether AT&T

23  Mobility, LLC ("AT&T") was in fact dismissed from these actions, and, if so, the reasons for

24  dismissal.

25

26

27  ───────────────

28  [1] To simplify, this Motion refers only to docket entries in the -01379 action.

1

**MOTION OF ADAPTIX FOR CLARIFICATION**

Defendant AT&T had filed motions to dismiss it as a party in these two Wave 2 actions. (Dkt. 142.) (Neither Amazon nor Sony moved to dismiss.)  On August 21, 2015, this Court entered a decision, Dkt. 164, labeled "ORDER GRANTING MOTION TO DISMISS" bearing the caption of nine different Adaptix actions, including these two.  But, although the 20-page text of the Order contained language actually dismissing the other seven actions (Dkt. 164 at 22), it contained no language (other than the caption) dismissing AT&T from these two actions.

Nor did the Court's explanation of why it was dismissing the other seven, Waves 3 and 4 actions cover the arguments Adaptix had raised that were unique to these two Wave 2 actions, or AT&T's responses. In particular, the handsets involved in these cases are *Amazon/Sony* handsets. The handsets involved in the Wave 1 cases, upon which AT&T had based its preclusion arguments, were *Apple/HTC* handsets. Because the Wave 1 judgment did not itself determine whether the Amazon/Sony handsets infringe, no preclusion doctrine would apply, despite "similarities between it and the products actually litigated." *Brain Life, LLC v. Elekta Inc*., 746 F.3d 1045, 1055, 1059 (Fed. Cir. 2014).[2] The Order, however, did not discuss how that difference in manufacturers, parties, and products would affect whether to grant or deny the motions.

Adaptix thus requests that the Court 1) clarify whether it is granting or denying AT&T's motions; and 2) explain, for purposes of eventual appellate review, the basis of its decision.

Claim Preclusion

In these two Wave 2 actions, AT&T had argued for dismissal based on claim preclusion arising from the Court's decision in the Wave 1 actions. (Dkt. 142 at 7-12; Dkt. 153 at 1-5.) Adaptix, however, had limited the claim in the Wave 1 actions to infringement by *Apple/HTC* handsets; the claim in those actions did not involve infringement by *Amazon/Sony* handsets.

---

[2] The Court dismissed the Wave 4 cases on a ground, claim-splitting, irrelevant to AT&T's motion in these two actions.  To summarize, the Court dismissed because an eventual final judgment in a Wave 2 case would create claim preclusion in a corresponding Wave 4 case as to the products of the manufacturer involved in the Wave 2 action. (Dkt. 164 at 18-22.) In response to the motions in those cases, Adaptix conceded that a final judgment in the Wave 2 cases would create claim preclusion as to acts of infringement, but only prior to the filing of those cases. See, for instance, No 5:15-cv-00962-PSG. (Dkt. 21 at 1-2.)

1      In response to the motion in the Wave 3 actions, Adaptix did not dispute that a final judgment

2  (win or lose) as to the Apple/HTC handsets in the Wave 1 actions would justify the Court's applying

3  claim preclusion to the *Wave 3* actions because the Wave 3 actions involved the same manufacturers

4  (Apple/HTC) and their products. Thus, in the Wave 3 actions, which the Order specifically dismissed

5  (Dkt. 164 at 22), Adaptix did not argue against claim preclusion for acts occurring before a cutoff

6  date.[3]

7      But, unlike Wave 3, these Wave 2 actions involve the use of only Amazon/Sony handsets,

8  which were not part of the claim in the Wave 1 actions. In response to AT&T's motions, Adaptix

9  explained that claim preclusion thus could not apply, unless AT&T argued that Adaptix had split its

10  claim by not including the Amazon/Sony handsets in one of the California actions. (Dkt. 152 at 4-6).

11  Adaptix argued that it could not have included all manufacturers in a single action because the AIA

12  would have prevented naming more than one manufacturer in any one action. (Dkt. 152 at 6-7.) But

13  even if the AIA would have allowed combining claims against AT&T in a single action, for claim

14  preclusion the law in the Ninth and other circuits required AT&T to have objected, during the

15  California action, to Adaptix's splitting of its claim – which AT&T never did. (Dkt. at 7-8.)

16      The Order does not mention any of these arguments, nor any of AT&T's responses to them.

17  Perhaps, in reviewing the multitude of briefs filed in the nine separate actions - which briefs, for the

18  most part, contained duplicative arguments - the Court overlooked the arguments unique to these two

19  actions. Perhaps, after now giving those arguments consideration, the Court will deny AT&T's

20  motion. But if the Court nevertheless finds claim preclusion as to the use of products by manufacturers

21  *different from* those the earlier action involved, the Court must explain the basis of its decision.

22      That explanation would not just be for eventual appellate review. The defendants (including

23  AT&T) in the related Texas actions, involving use of LG and Pantech handsets, argued at a hearing on

24  August 27 that this Court's August 21 decision[4] itself creates issue preclusion as to the preclusive

---

[3] In granting the motion to dismiss in the Wave 3 actions, this Court rejected Adaptix's argument that
the Federal Circuit imposes a cutoff date for claim preclusion. (Dkt. 164 at 13-15.) Adaptix had raised
the same argument here (Dkt. 152 at 8-12) and assumes that the Court would reject that argument in
these Wave 2 cases, as well.

[4] As this Court has not entered final judgment in these two actions, it would seem the decision in these
two actions could not, for that reason alone, create issue preclusion. But, as the Court did enter a final

1   effect of the Wave 1 judgment. Judge Schroeder has asked the parties to brief that issue.

2   <u>*Kessler* Doctrine</u>

3   AT&T had also argued for dismissal based on the *Kessler* Doctrine. (Dkt. 142 at 12-16; Dkt.

4   153 at 5-11.) But, as with claim preclusion, the *Kessler* doctrine would not apply to the use of

5   Amazon/Sony handsets, because they are products of manufacturers different from those involved in

6   the Wave 1 cases.

7   To support its dismissal in the initial Wave 3 cases based on the *Kessler* doctrine[5], this Court

8   relied on *Brain Life, LLC v. Elekta Inc*., 746 F.3d 1045 (Fed. Cir. 2014). (Dkt. 164 at 16-17.) But,

9   again, the Wave 3 cases involved the same manufacturers' products as in Wave 1. In *Brain Life*, the

10  defendant had also been the defendant in the earlier litigation, and was selling certain products that

11  were "new versions of the previously-accused products." (Dkt. 164 at 16.) The Federal Circuit applied

12  the *Kessler* doctrine because there was no material difference between those products and the

13  previously adjudicated not infringing products of *the same defendant* regarding the limitations of the

14  apparatus claims. But the Federal Circuit refused to apply the *Kessler* doctrine to a product *not*

15  *involved* in the earlier case (the ERGO ++ product), even though being sold by the same defendant,

16  because the question of whether it infringed had never been addressed.  746 F.3d at 1051.

17  Importantly, the Federal Circuit reached this conclusion, notwithstanding that:

18      similarities between [the ERGO ++ product]  and the products actually litigated may mean that
19      certain questions regarding infringement of the system claims effectively may be foregone
        conclusions. Because it was a different product, questions of infringement are not barred by
        our case law applying issue preclusion to previously challenged products which have not been
20      materially altered.
                                    ...
21      [T]he ERGO ++ has never acquired the status of a noninfringing device in connection with the
        '684 patent. Unlike Elekta's other products, neither claim preclusion, issue preclusion, nor the
22      *Kessler* Doctrine stand as a bar to Brain Life's current allegations of infringement regarding
        the ERGO++.
23

24  *Id.* at 1055, 1059. Given that the Supreme Court, in *Kessler*, said it was giving the manufacturer a

25  "limited trade right to continue producing, using, and selling the electric letters that were the subject of

26  judgment in the other seven cases, it may be important to specify separately the basis of decision in
27  these, as opposed to the other, cases.

28  [5] The Court's ruling was limited to the Wave 3 cases, because the Defendants in the Wave 4 cases did
    not argue that the *Kessler* Doctrine applied to their cases.

the first suit," *Brain Life*, 746 F.3d at 1056, it would be anomalous to extend the doctrine to *competitors* of the manufacturer, based merely on product similarities.[6]  That would be, at best, an argument for issue preclusion, which would not apply here.

**CONCLUSION**

Adaptix requests that the Court clarify its Order to 1) state whether it is granting or denying the motion of AT&T to dismiss in these two cases; and 2) explain the basis of its decision.

Dated:  September 8, 2015                     Respectfully submitted,

By: */s/ James J. Foster*
Paul J. Hayes
James J. Foster
**HAYES MESSINA GILMAN HAYES, LLC**
200 State Street, 6th Floor
Boston, MA 02109
Email: phayes@hayesmessina.com
Email: jfoster@hayesmessina.com
Telephone: (617) 439-4200
Facsimile: (617) 443-1999

Christopher D. Banys
Richard C Lin
Jennifer L. Gilbert
Banys, P.C.
1032 Elwell Court, Suite 100
Palo Alto, CA 04303
Email: cdb@banyspc.com
Email: rcl@banyspc.com
Email: jlg@banyspc.com
Telephone: (650) 308-8505
Facsimile: (650) 353-2202

**Attorneys for Plaintiff ADAPTIX, INC.**

---

[6] No court has ever applied the *Kessler* Doctrine to competitors. Although in *Brain Life* itself, the patent owner had originally sued, in a single action, *Elekta* and three of its competitors. (3:10-cv-01539-CAB-BGS (S.D.Cal.)), the District Court severed the case against *Elekta*. (3:12-cv-303 (S.D.Cal.)).

1

2

3

## CERTIFICATE OF SERVICE

4          I certify that this document is being served on September 8, 2015 to all counsel of record who
are deemed to have consented to electronic service via the Court's ECF system per Civil Local Rule 5-
5     1.

6                                                  */s/ James J. Foster*
                                                   James J. Foster
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28